IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

2009 SEP -9 AM 8: 24

CLERK
S. DIST. OF GA.

| | | |
|---|---|---|
| RONALD EDWARD POPE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 308-104 |
| | ) | |
| DANIEL STONE, Warden, et al., | ) | |
| | ) | |
| Respondents. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate incarcerated at Rogers State Prison in Reidsville, Georgia, brought the above-captioned case pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Respondent Baker's "Motion to Dismiss Attorney General Baker as an Improper Party Respondent" (doc. no. 5) be **GRANTED**, that Respondent Baker be **DISMISSED**, that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Stone.

### I. BACKGROUND

Petitioner was indicted by a grand jury on April 26, 1999, for aggravated assault and possession of a firearm by a convicted felon. (Doc. no. 6, Ex. C at Ex. 2). Petitioner was tried before a jury on May 2 and 3, 2000; the jury was unable to reach a verdict, and the case

resulted in a mistrial. (Id. at Ex. 3). Petitioner's second trial was held on August 17, 2000.

(Id. at Ex. 4). The jury convicted Petitioner of aggravated assault, and in a bifurcated

proceeding, convicted him of possession of a firearm by a convicted felon. (Id.). Petitioner

was sentenced to twenty years of incarceration for the aggravated assault conviction and five

years of incarceration, to run consecutively, for the possession of a firearm conviction. (Id.

at Ex. 2). Petitioner appealed his convictions. In his direct appeal, Petitioner, who was

represented by counsel,[1] raised one claim of ineffective assistance of trial counsel because

his counsel did not contest the voluntariness of a statement he made to law enforcement

officers. (Id. at Ex. 1). Petitioner's conviction was affirmed. (Id.).

On February 3, 2004, Petitioner filed a state habeas corpus petition in the Superior

Court of Tattnall County. (Id. at Ex. B). Petitioner raised the following claims in his state

habeas petition:

(1)     that prosecutorial misconduct in using perjured testimony of his
        former girlfriend, whom Petitioner asserted was not credible because
        her statements were contradictory;

(2)     that the evidence was insufficient to prove guilt;

(3)     that the court allowed the admission of improper opinion and bad character
        evidence;

(4)     that there were improper opening and closing remarks;

(5)     that there was an attempted obstruction of justice by the prosecutor;

(6)     that there was a shifting of the burden to Petitioner;

---

[1]Petitioner was represented by Morris Robertson, Esquire, at both of his trials, and
was represented by Charles Mitchell Warnock, Esquire ("Mr. Warnock"), for his motion for
new trial and on appeal.

(7)    that the grand jury was not a fair cross-section of the community, mostly women, and Petitioner was prejudiced because the state's key witness was a woman; and

(8)    that Petitioner's equal protection rights were violated because his co-defendant had a private attorney and received less time in prison.

(Id.).  Petitioner's habeas corpus claims were denied on June 20, 2006.[2]  (Id.).  The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal ("CPC") on November 3, 2008.  (Id. at Ex. A).

Petitioner then executed the above-captioned petition on November 9, 2008.  (Doc. no. 1).  Petitioner raises five general grounds with multiple subparts as grounds for relief in his federal petition:

(1)    Petitioner alleges prosecutorial misconduct in violation of his due process rights because:

    (a)    the jury was misled based on certain statements and testimony proffered by the state;

    (b)    the jury was misled "by highly egregious closing remarks";

    (c)    undue pressure was put on the jury to "do its duty" during closing remarks, a tactic Petitioner believes to be fundamentally unfair;

    (d)    Petitioner's incriminating statements to law enforcement officials was inappropriately put before the jury "for obvious reasons";

    (e)    the state proffered improper bad character testimony;

    (f)    the court allowed the jury to hear the impermissible opinion of a state witness on an ultimate fact;

    (g)    the improper vouching by the state of its unreliable prosecution

---

[2]The state habeas corpus court entered an order denying Petitioner relief on June 20, 2006, but it was initially inadvertently filed in a separate unrelated action; it was then re-filed in the correct case on April 8, 2008.  (Doc. no. 4, p. 12).

witness misled the jury as to her credibility;

(h) the prosecutor's improper opinion as to the guilt of Petitioner likely led the jury to believe that he had knowledge beyond the jury's to have made the statement;

(i) the opinions of the prosecutor regarding evidence were impermissible and prejudicial;

(j) Petitioner was asked questions with no probative value;

(k) misstatements and falsehoods were presented to the jury to prejudice Petitioner and to bolster the state's illegal prosecution;

(l) "reading law" violations mislead and confused the jury;

(m) during the opening statement, the prosecutor outlined to the jury what would be proven; this statement was misleading and confusing in light of the presentation of defense counsel's version;

(n) the state violated the rule of sequestration because the lead detective was permitted to stay in trial; and

(o) the lead detective failed to check the gun for fingerprints, negating any chance of identifying the person who placed the gun where it was found.

(2) Petitioner alleges judicial misconduct, in violation of his due process rights, because:

(a) the court allowed the prosecutor's misconduct to go unchecked;

(b) the court allowed the prosecutor's closing remarks stated in Ground One above; and

(c) the court participated in the accompanying charge, the court allowed the prosecutor to act as a judge, and at times the judge seemed to be "predisposed."

(3) Petitioner alleges a compulsory and due process violation of his rights concerning his alibi defense. Petitioner sought to have his brother testify regarding his whereabouts on the night of the incident leading to Petitioner's conviction, but after the prosecutor informed the brother that if he were to

4

testify, he could be indicted, the brother decided not to testify.

(4) Petitioner alleges ineffective assistance of trial counsel based on the following:

    (a) failing to properly cross examine Ms. Graham, his former girlfriend;

    (b) failing to inquire about specific witness testimony;

    (c) performing in concert with the prosecutor;

    (d) allowing witnesses to testify regarding whether they saw more than one person;

    (e) failing to properly question witnesses;

    (f) not objecting to prosecutorial misconduct; and

    (g) not presenting alternative possibilities to the jury that another person committed the crime.

(5) Petitioner alleges ineffective assistance of appellate counsel for counsel's failure to raise the claims Petitioner alleged in Grounds One through Four.

(Doc. no. 1). Respondents submit that Respondent Baker should be dismissed as an improper party Respondent; they also assert that Petitioner is not entitled to relief on his asserted claims and/or that his claims are procedurally defaulted. (Doc. nos. 4, 5).

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended § 2254(d) to provide:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

5

by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court addressed Section 2254(d) in <u>Brown v. Payton</u>, 544 U.S. 133 (2005). The Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> The AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

<u>Id.</u> at 141 (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003). In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA sets a highly deferential standard of review for state court factual determinations. The AEDPA "requires federal habeas courts to presume the

correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Thus, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000). If the record provides any support for a state court's factual findings, this Court may not set aside those findings unless and until they are rebutted by clear and convincing evidence. Crawford, 311 F.3d at 1317.

### III. DISCUSSION

**A.    Improper Respondent**

The Court finds that Attorney General Baker is an improper Respondent and should be dismissed. Pursuant to 28 U.S.C. § 2242, an application for a writ of habeas corpus shall allege the name of the person having custody over a petitioner. Furthermore, Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts states that for habeas petitioners who are currently in the custody of the state, "the petition must name as respondent the state officer who has custody." The Advisory Committee Notes to Rule 2 explain that the state officer having custody of the petitioner, often a prison warden, is the appropriate respondent when a petitioner is seeking relief from a sentence for which he is

currently incarcerated. The Notes further explain that the state Attorney General is an appropriate party respondent when the petitioner is attacking a sentence which will be carried out in the future or for which the petitioner is not incarcerated, on probation, or on parole. As another federal court has explained, "[T]he only proper respondent in a collateral attack is the petitioner's custodian. . . . If the petitioner is in prison, the warden is the right respondent. . . . A state's attorney general is a proper party only if the petitioner is not then confined, but expects to be taken into custody." Hogan v. Hanks, 97 F.3d 189, 190 (7th Cir. 1996).

As Petitioner is challenging the sentence for which he is currently incarcerated, Warden Stone is the only proper Respondent. Therefore, the Court **REPORTS** and **RECOMMENDS** that Respondent Baker's "Motion to Dismiss Attorney General Baker as an Improper Party Respondent" (doc. no. 5) be **GRANTED** and that Respondent Baker be **DISMISSED**.

## B. Defaulted Claims

### 1. Exhaustion and Procedural Default Rules Explained

The AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss habeas claims that the petitioner has a right to raise, by any available procedure, in state court. 28 U.S.C. § 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c) (emphasis added). In reference to this requirement, the Supreme Court has held

that a state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

As the Eleventh Circuit has explained, "[a] state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). The exhaustion requirement applies with equal force to all constitutional claims, including claims of ineffective assistance of counsel. Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously."). Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal habeas petitioner can run afoul of procedural default rules in one of two ways. First, a federal habeas petitioner can improperly attempt to revive an old claim that a state court has previously denied on procedural grounds. When a state court denies a

constitutional claim on "adequate and independent"[3] state procedural grounds, the district

court is precluded from later reviewing the merits of the claim on collateral attack. Judd, 250

F.3d at 1313.

Likewise, a federal habeas petitioner runs afoul of procedural default rules when he

attempts to bring a new claim that would be procedurally barred if he attempted to raise it

in state court. In such instances, the petitioner's failure to bring the claim properly in state

court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1139 (11th

Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless

'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal

habeas relief." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see also Harris

v. Reed, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a

federal claim be presented to a state court if it is clear that the state court would hold the

_____

[3]A state court decision rests upon "adequate and independent" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state rule must be adequate, i.e., it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine.

Judd, 250 F.3d at 1313 (internal quotations and citations omitted).

claim procedurally barred."). Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006).

Of note here, under Georgia law, absent a showing of cause to excuse the default and actual prejudice, the failure to object at trial or to raise on direct appeal any alleged error creates a procedural bar to its consideration in a habeas corpus proceeding. See O.C.G.A. § 9-14-48(d); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). Georgia law also requires that claims of ineffective assistance of trial counsel be raised at the "earliest practicable moment" by new counsel, or absent a showing of cause and prejudice, the claims are procedurally defaulted. White v. Kelso, 401 S.E.2d 733, 734 (Ga. 1991); Thompson v. State, 359 S.E.2d 664, 665 (Ga. 1987).

Of course, the Eleventh Circuit has explained that a procedural default may be excused if certain conditions are met:

> A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default. Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice.

Jones, 436 F.3d at 1304 (internal citations omitted). Cause entails a showing "that some objective factor external to the defense impeded" efforts to comply with the state procedural

rule. <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991).[4]  A state petitioner may also

demonstrate cause to overcome a procedural default by demonstrating that he received

constitutionally ineffective assistance of counsel. <u>Turpin v. Todd</u>, 493 S.E.2d 900, 906 (Ga.

1997).   The narrow fundamental miscarriage of justice exception, on the other hand,

encompasses the extraordinary instance in which a constitutional violation probably has

resulted in the conviction of one actually innocent of the crime. <u>Murray v. Carrier</u>, 477 U.S.

478, 496 (1986).

## 2.    Petitioner's Defaulted Claims

In Grounds One through Five of his federal habeas petition, Petitioner alleges (1)

prosecutorial misconduct, (2) judicial misconduct, (3) compulsory and due process violations

of his rights concerning his alibi defense, (4) ineffective assistance of trial counsel, and (5)

ineffective assistance of appellate counsel.  Petitioner did not raise the claims alleged in

Ground One - subsections (l) and (n), Ground Two, and Ground Four - subsections (c) and

(g), of his federal habeas petition in any state court.  Under Georgia's successive petition

statute discussed previously, state remedies are no longer available to Petitioner on these

claims.  <u>See</u> O.C.G.A. § 9-14-51; <u>Chambers</u>, 150 F.3d at 1327.  Moreover, Petitioner has

presented no justification for failing to raise these claims in state court, and therefore he has

failed to demonstrate the cause and prejudice necessary to overcome his procedural default

---

[4]If a petitioner is able to prove cause, he must then show prejudice by demonstrating
that the errors at trial not only "'created a *possibility* of prejudice, but that they . . . infect[ed]
his entire trial with error of constitutional dimensions.'"  <u>Johnson v. Alabama</u>, 256 F.3d
1156, 1171 (11th Cir. 2001) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).

of these claims. Neither has Petitioner shown that a miscarriage of justice will occur if the Court does not consider these claims. Accordingly, the Court concludes that these claims have been defaulted and therefore do not provide a basis for federal habeas relief.

The remaining claims alleged in Grounds One through Four were presented to the state habeas court, which found them to be defaulted because they had not been raised at trial or on direct appeal. (Doc. nos. 6, Ex. B) (citing O.C.G.A. § 9-14-48(d); Black, 336 S.E.2d at 755). The state habeas court also concluded that Petitioner had not demonstrated cause and prejudice to overcome the procedural default. (Id.). Respondent contends that this Court should defer to the state habeas court's findings on these issues. (Doc. no. 4, pp. 22-25).

The procedural default rule relied upon by the state habeas and appellate courts constitutes an independent and adequate state procedural ground in that it is exclusively a state doctrine and it is regularly applied by Georgia state courts. See Hightower v. Schofield, 365 F.3d 1008, 1037 (11th Cir. 2004), abrogated on other grounds by Hightower v. Schofield, 545 U.S. 1124 (2005); Defuentes v. Dugger, 923 F.3d 801, 803 (11th Cir. 1991). Thus, this Court is barred from considering the claim unless Petitioner can show cause and prejudice sufficient to overcome his default or that a fundamental miscarriage of justice has occurred. Although Petitioner makes multiple claims of ineffective assistance of counsel that might excuse his default, see Turpin, 493 S.E.2d at 906, as explained infra, the Court

determines that such claims have either been procedurally defaulted[5] or that the state habeas court properly concluded that Petitioner's appellate counsel rendered effective assistance of counsel. Thus, Petitioner's claims of ineffectiveness of counsel do not suffice to excuse his procedural default. Furthermore, Petitioner has failed to present any other evidence to suggest that appellate counsel was ineffective or otherwise demonstrate cause as to why his procedural default should be excused.[6] Because Grounds One through Four have been defaulted (and this default has not been excused), these claims are barred from review and do not provide a basis for granting federal habeas corpus relief.

### 3. Claims Rejected by the State Courts

#### a. Alleged Ineffectiveness of Appellate Counsel

In Ground Five of his federal petition, Petitioner alleges that his appellate counsel was ineffective for failing to raise on appeal all claims he raised in Grounds One through Four. Petitioner presented these claims, including their subparts, in his state habeas petition. However, specifically applying the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), and Battles v. Chapman, 506 S.E.2d 838 (Ga. 1998), the state habeas court

---

[5]It is well-settled that a claim of ineffective assistance of counsel must be presented to state courts as an independent claim before it may be used to establish cause to overcome procedural default. Payne v. Allen, 539 F.3d 1297, 1314 n.16 (11th Cir. 2008) (quoting Murray v. Carrier, 477 U.S. 478, 488-89 (1986)); Henderson v. Campbell, 353 F.3d 880, 896-97 (11th Cir. 2003). Because some of Petitioner's claims of ineffective assistance of counsel have not been presented for review in state court and have been procedurally defaulted, they may not be used to establish cause to overcome the procedural default of Petitioner's other claims.

[6]Because Petitioner has not demonstrated cause, the Court does not reach the issue of prejudice. See Johnson, 256 F.3d at 1171.

determined that Petitioner's appellate counsel acted well within the constitutional parameters of reasonableness in his representation of Petitioner. (Doc. no. 6, Ex. B).

As correctly noted by the state habeas court, ineffective assistance of counsel claims are analyzed under the two-prong test set forth by the Supreme Court in Strickland v. Washington.[7] To make out a claim of ineffective assistance of appellate counsel, Petitioner must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, he must show that he suffered such prejudice that, but for his appellate counsel's errors, there is a reasonable probability that the results of the proceeding would have been different. Id. at 694. The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by the state habeas court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)).

With regard to the performance prong of Strickland, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the

---

[7]The Strickland test applies to claims of ineffective assistance of both trial and appellate counsel. See Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

15

attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at

691. "Given the strong presumption in favor of competence, the petitioner's burden of

persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head,

261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with

what the best lawyers would have done. Nor is the test even what most good lawyers would

have done. We ask only whether some reasonable lawyer . . . could have acted, in the

circumstances, as [appellate] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512

(11th Cir. 1995) (en banc).

A court, however, "need not determine whether counsel's performance was deficient

before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack

of sufficient prejudice, which we expect will often be so, that course should be followed."

Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice prong of

Strickland, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome .

. . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). As the Eleventh Circuit has ruled,

an affirmative showing of prejudice that would undermine the results of the proceedings is

necessary because "'attorney errors come in an infinite variety and are as likely to be utterly

harmless in a particular case as they are to be prejudicial. That the errors had some

conceivable effect on the outcome of the proceeding' is insufficient to show prejudice."

16

Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

Furthermore, in the appellate context, the Court recognizes that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). It is up to appellate counsel to winnow out weaker arguments and select the most promising issues for review. Id. at 751-52. Indeed, the appellate "attorney need not advance every argument, regardless of merit, urged by the appellant . . . ." Evitts v. Lucey, 469 U.S. 387, 394 (1985).

Along with these basic principles concerning ineffective assistance of counsel claims, the Court must also consider the facts underlying Petitioner's convictions. The facts underlying Petitioner's convictions are set forth in the Georgia Court of Appeals decision and, pursuant to § 2254(e)(1), are – contrary to Petitioner's belief (doc. no. 7, p. 2) – presumed to be correct. The facts are as follows:

> In exchange for money, [Petitioner] volunteered to put the victim, a virtual stranger, "out of commission." Mark Ashley Windham testified that while drinking one night, he expressed a desire to have R.J., the victim, "skinn[ed] up" because he believed that R.J. "was trying to beat me out of a lot of money on a job." Windham testified that he just wanted someone to "beat the man up." When [Petitioner] learned of Windham's wish, he offered his services. Windham agreed to pay [Petitioner] $1,000 to beat up R.J. Windham claimed, however, that after several months, he lost interest and told [Petitioner], "to forget about it and get a job and go on with his life." According to Windham, the day after R.J. was shot, [Petitioner] telephoned him, saying he wanted his money. Windham testified, "I asked him . . . why had he went [sic] and done something crazy like that." Windham testified that [Petitioner] said that "he didn't figure that I cared how it got done as long as it was done." When [Petitioner] insisted on full payment, Windham met him in another city and handed him an envelope with $700. While admitting that "I did have a part in it," Windham repeatedly testified to the effect that "I did not mean for this man to be shot."

After the shooting, [Petitioner] became a suspect when his girlfriend implicated him to law enforcement officials. [Petitioner's] girlfriend testified that she became deeply troubled when [Petitioner] told her that if the gun had not jammed, "I'd have shot him more than once." Shortly after hearing [Petitioner's] incriminating comments, his girlfriend contacted police. While [Petitioner] was in jail for an unrelated crime, he offered to lead police to the gun used in the shooting. [Petitioner] directed investigators to a 9mm pistol concealed beneath some insulation in the ceiling of the crawl space of his residence and [Petitioner] offered to retrieve it.

A State firearms examiner performed forensic testing on the spent round surgically removed from R.J. and matched it to the 9mm Smith and Wesson recovered from its hiding place at [Petitioner's] residence. Through test-firing the pistol, this expert in firearms identification determined that the bullet that penetrated the victim's body corresponded with striations created by that pistol on other rounds. In his expert opinion, the bullet extracted from the victim had been fired from that pistol.

R.J., the project superintendent for constructing some apartments, described problems that he had experienced with Windham, whose company was responsible for the installation of water and sewer pipes. Exasperated by Windham's excuses, delays, and general ineptitude, R.J. "[c]hewed him out very vigorously," and "I ran him off the job." By R.J.'s recollection, [Petitioner] had appeared at the job site twice, once posing as a day laborer and later, as a salesman for a security system company. R.J. testified that on the night of the shooting, while sitting on the couch in his travel trailer, he heard a pop, saw the discharge, and looked down to see "a hole in my stomach." R.J. did not see who fired the shot. As a result of the shooting, R.J. lost one kidney and part of his colon.

In an audiotaped interview, [Petitioner] described in elaborate and chilling detail, the events that culminated in the shooting. [Petitioner] recounted how Windham wanted someone "put out of commission." [Petitioner] asked Windham, "[Y]ou mean like his arms and legs broke or something?" and Windham responded, "[Y]eah, that will work." [Petitioner] then "got his name and where he worked at and what he drove and where he lived." As [Petitioner] explained, "I started scoping the man out at his job and at his house. At one point, I dressed up like a bum and walked up there and acted like I was looking for a job when I couldn't get in the trailer." On the second occasion, [Petitioner] pretended to be a salesman. Finally, wearing a bandanna, a hooded jacket, and gloves, [Petitioner] approached R.J.'s home at night with a loaded pistol. Peering though the window blinds,

[Petitioner] said that he could see his target sitting on a couch. [Petitioner] stated, "I aimed for his leg and shot one time and I [ran away]." After disposing of his shoes, and trying to establish an alibi, [Petitioner] tried to call Windham to tell him "it was done." Days later, according to [Petitioner] Windham gave him an envelope containing $700 in cash.

(Doc. no. 6, Ex. C at Ex. 1).

### b.      Failure to Raise Trial Counsel's Alleged Errors

In the instant petition, Petitioner alleges, as he did in his state habeas petition, that appellate counsel was ineffective for failing to raise on appeal the alleged errors noted in the petition's Grounds One through Four. The state habeas court heard testimony from Mr. Warnock, Petitioner's appellate counsel. At the hearing, Mr. Warnock testified he had been in practice for five years at the time of his representation of Petitioner. (Doc. no. 6, Ex. C). Mr. Warnock testified that after he reviewed the transcripts of both of Petitioner's trials, talked to Petitioner's trial counsel, and conducted legal research, he determined that no errors of law had been committed by the court and found no strong claims of ineffective assistance of trial counsel. (Id.). Mr. Warnock testified that Petitioner did not state any particular claims he wanted raised on appeal, but did express his dissatisfaction with trial counsel and trial counsel's cross-examination of Petitioner's former girlfriend, Ms. Graham. (Id.). In deciding what to appeal, Mr. Warnock was of the opinion that there were no strong issues, and he "raised the ineffective assistance of trial counsel claim as the only issue on which he felt he could stretch to present a viable argument." (Id.).

Additionally, Mr. Warnock testified that he reviewed Petitioner's current complaints regarding his trial counsel and determined that they were not meritorious. (Id.). Based on the trial record, Mr. Warnock's qualifications, and Mr. Warnock's testimony that he appealed

19

the issue that he found to have even slight merit, the state habeas court determined that Petitioner had not received ineffective assistance of appellate counsel. (Id.).

Although Petitioner asserts that his appellate counsel was ineffective for failing to raise the alleged errors raised in Grounds One through Four of this federal petition, the state habeas court concluded otherwise. The state habeas court noted that Mr. Warnock testified that nothing about the composition or selection of the grand jury, which is randomly selected, provided a viable basis for challenge. (Id.). Nor did he see a basis for challenging trial counsel's voir dire decisions. (Id.). Additionally, he concluded that a challenge concerning the lead detective remaining in court and not testifying first would not have been meritorious. (Id.). Next, upon reviewing trial counsel's examination of witnesses, he concluded that trial counsel did a very thorough job with cross-examinations and impeachment of all witnesses. (Id.). Mr. Warnock further noted that trial counsel did not file for discovery because there was an open file discovery policy and may have declined to do so for tactical reasons. (Id.). Concerning Petitioner's claims for prosecutorial misconduct, Mr. Warnock did not see any prosecutorial misconduct in the case; nor did he see the jury's verdict as resulting from any improprieties by the prosecution. (Id.).

As a result, the state habeas court determined that Petitioner's appellate counsel acted well within the constitutional parameters of reasonableness in his representation of Petitioner and in his decisions regarding how to advocate for Petitioner on appeal. The state habeas court also determined that Petitioner failed to establish a reasonable probability of a different result but for alleged unprofessional error by counsel. (Id.). Furthermore, the state habeas court found that Petitioner failed to establish that the issues which he now asserts should

20

have been raised on appeal were so strong, or so much stronger than those raised by counsel, that only an incompetent attorney would have failed to raise them. (Id.). Finally, the state habeas court determined that Petitioner failed to overcome the presumption of effective performance or to establish a reasonable probability of a different result but for alleged error by appellate counsel. (Id.).

The Court notes that Petitioner offers no additional evidence, much less "clear and convincing evidence," in his federal habeas petition to undermine or contradict the factual determinations of the state court. Accordingly, it cannot be said that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, Petitioner's claim in Ground 5 is without merit and should be denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent Baker's "Motion to Dismiss Attorney General Baker as an Improper Party Respondent" (doc. no. 5) be **GRANTED**, that Respondent Baker be **DISMISSED**, that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Stone.

SO REPORTED and RECOMMENDED this 9th day of September, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

21